UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA

| | | |
|---|---|---|
| TABITHA MARIE SMITH (Deceased) (aka Tabatha Marie Colbaugh), by and through her surviving children NATHAN ALEXANDER SMITH, JE through next friend JH, NR through next friend SR, and LC through next friend EH, | ) ) ) ) ) ) ) | No. 1:25-cv-00050-DCLC-CHS  JURY DEMAND |
| and | ) ) | |
| NATHAN ALEXANDER SMITH, JE through next friend JH, NR through next friend SR, and LC through next friend EH, (individually), *Plaintiffs,* | ) ) ) ) ) ) | |
| v. | ) ) | |
| GARMIN INTERNATIONAL, INC. *Defendant*. | ) ) ) | |

**O R D E R**

This matter is before the Court upon Plaintiffs' Motion for Forensic Examination Pursuant to Proposed Inspection Protocol [Doc. 30].[1] The Court conducted a hearing on this motion on January 27, 2028. Plaintiffs were represented by Attorneys Paul Matouka, Robin Flores, Neil Thomas, and Jeff Rufolo. Defendant was represented by Attorney Donald Kelly.

By way of background, on the night of February 14, 2025, Officer Robert Leonard, who was employed by the Meigs County Sheriff's Department, arrested Tabitha Smith on the

---

[1] The Court also reviewed Defendant Garmin International, Inc.'s Response to Plaintiffs' Motion [Doc. 33], Plaintiffs' Reply in Support of their Motion for Forensic Examination Pursuant to Proposed Inspection Protocol [Doc. 44], and Defendant Garmin International Inc.'s Sur-Reply to Plaintiffs' Reply [Doc. 50].

Highway 60 bridge,[2] and placed her in the back of a patrol car. Officer Leonard's stated intention was to drive Ms. Smith to the Meigs County Sheriff's Department office in Decatur, Tennessee. Instead, Officer Leonard proceeded on a route that took him onto Blythe Ferry Lane—a road that dead-ends into the Tennessee River at the site of a ferry crossing that existed until roughly the time the Highway 60 bridge was constructed in the mid-1990s. As a result, Officer Leonard drove the patrol car into the Tennessee River, and both he and Ms. Smith drowned.

Defendant believes that Officer Leonard purchased a Garmin Drive 52 EX navigation device ("Garmin Device") in December 2023. Officer Leonard had the Garmin Device with him in the vehicle at the time the accident occurred. The patrol car was recovered from the Tennessee River on the day following the accident. About a month later, the Garmin Device was retrieved from the vehicle, cleaned up, and subjected to a limited forensic examination by the 9th Judicial District Attorney General's office ("District Attorney").

The parties in the present case agree that their expert witnesses should perform a forensic examination of the Garmin Device to download, preserve, and analyze all information and data still residing on that device. By way of methodology, Plaintiffs' expert witness, Robert Draper, proposes that the Garmin Device be subjected to an "ISP extraction"[3] which he claims will be non-destructive and will avoid introducing new information or data into the device. If that method of extraction is ineffective, Mr. Draper proposes, as a backup, a "chip-off extraction method," which does involve some risk of damage to the Garmin Device, as well as the possibility of some data loss.

Defendant disagrees with the methodology proposed by Plaintiffs. Defendant's expert witness, Jeff Martin, states that Plaintiffs' proposal understates the potential risks presented by

---

[2] The Highway 60 bridge, also referred to as "the Tri-County Veterans Bridge," carries Tennessee State Route 60 across the Tennessee River connecting Meigs and Rhea counties.
[3] "In System Programming" extraction.

the ISP extraction and chip-off extraction methods. He proposes instead that information be extracted from the Garmin Device through a primary method, "Logical Acquisition," partnered with "File System Acquisition." At the risk of oversimplification, this method would involve powering up the Garmin Device and downloading the information, data, and files onto another device capable of reading and interpreting the downloaded information. Defendant argues that this method will facilitate the download of the data and information from the Garmin Device to create a forensic copy which can be restored on a separate device. Plaintiffs express the concern that Defendant's proposed method of extraction risks overwriting data currently housed on the Garmin Device. Defendant's counsel counters that no such risk exists given the brief period that the Garmin Device was in use, the limited data that was likely stored on the device, and the large storage capacity (7.2 gigabytes) of the device. Defendant offers that, after extraction of data is accomplished using its proposed method, Plaintiffs could then still elect to employ the ISP and chip-off extraction methods if Plaintiffs are not satisfied with the completeness and integrity of Defendant's download.

After reading the extensive briefing on these issues, and listening to argument from counsel, the Court expressed its preference for Defendant's suggested method of extraction of data from the Garmin Device, while reserving the right of Plaintiffs to employ the additional methods proposed by their expert after Defendant performs its extraction. However, the Court reserved making a final ruling on this issue, and directed counsel for the parties to arrange a meeting between their respective expert witnesses to discuss the extraction protocols and attempt to craft a mutually agreeable protocol consistent with the Court's express preference. In the event counsel for the parties cannot craft and submit to the Court a mutually agreeable extraction protocol, the Court will make a definitive ruling on the pending motion. To that end, the Court

directed counsel for the parties to file a joint status report with the Court by February 19, 2026, notifying the Court whether a mutually agreeable extraction protocol has been reached, and, if not, whether the issues for the Court's determination have been narrowed.

During the hearing, the parties also expressed their concern to the Court that, because the parties' expert witnesses were not able to agree upon a protocol for the data extraction on the Garmin Device, counsel will not be able to comply with the expert disclosure deadlines set forth in the Scheduling Order[4] [Doc. 25]. The parties' concern is well taken, and the Court will hold in abeyance the expert disclosure deadlines until such time as an order is entered by the Court confirming the extraction protocol that will be employed on the Garmin Device. Following entry of that order, the Court will give counsel an opportunity to file a motion proposing new scheduling deadlines.

For the foregoing reasons, it is hereby **ORDERED** that:

1. The Court will defer ruling on Plaintiffs' Motion for Forensic Examination Pursuant to Proposed Inspection Protocol [Doc. 30] until after the parties file a Joint Status Report, which is due by February 19, 2026, detailing their respective expert witnesses' efforts to craft a mutually agreeable protocol for the data extraction on the Garmin Device; attaching such mutually agreeable protocol; or, in the absence of such mutual agreement, attaching any proposed revisions to the earlier suggested protocols proposed by the parties.

2. The expert disclosure deadlines set forth in the Court's Scheduling Order [Doc. 25] will be held in abeyance until such time as an order is entered by the Court ruling on Plaintiffs' Motion for Forensic Examination Pursuant to Proposed Inspection Protocol [Doc. 30]. Following entry of such order, the Court will give counsel an opportunity to file a motion to amend the scheduling order, which motion will propose new scheduling deadlines.

**SO ORDERED.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[4] February 19, 2026, for Plaintiffs; March 23, 2026, for Defendant.