**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA**

| | |
|---|---|
| **TABITHA MARIE SMITH (Deceased) (aka Tabatha Marie Colbaugh), by and through her surviving children NATHAN ALEXANDER SMITH, JE through next friend JH, NR through next friend SR, and LC through next friend EH,**<br><br>**and**<br><br>**NATHAN ALEXANDER SMITH, JE through next friend JH, NR through next friend SR, and LC through next friend EH, (individually),**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**GARMIN INTERNATIONAL, INC.**<br><br>**Defendant.** | **CIVIL ACTION NO.1:25-CV-50**<br><br>**JURY DEMAND** |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GARMIN INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs' claims center on a single dispositive issue: whether the Garmin Drive 52 EX found in Deputy Leonard's patrol vehicle ("the Device") displayed a nonexistent bridge crossing the Tennessee River from Blythe Ferry Lane on the night of February 14, 2024 ("the Accident"). Each claim asserted against Garmin, whether styled as strict liability, negligence, or gross negligence, depends upon Plaintiffs' ability to prove that the Device displayed such a bridge and that the alleged display caused Deputy Leonard to drive into the Tennessee River. Yet, after discovery and a complete forensic acquisition of the Device, Plaintiffs have failed to identify a single piece of expert analysis or admissible evidence establishing either proposition.

Plaintiffs' failure is consequential because determining what a GPS navigation device displayed on a particular date, how its mapping software operated, whether its map data contained an alleged error, and whether any such display contributed to the Accident requires specialized technical analysis well beyond the knowledge of a lay juror. Tennessee courts address this predicament by routinely requiring expert testimony to establish defect and causation in complex products-liability cases. Nevertheless, despite possessing a forensic image of the Device for months and despite the expiration of their September 15, 2026 second amended expert disclosure deadline, Plaintiffs have failed to disclose an expert, provide an expert report, or offer any expert testimony supporting their claims. Without such proof, Plaintiffs cannot establish the essential elements of their case.

Moreover, the existing evidence affirmatively disproves Plaintiffs' theory. Plaintiffs' allegation that the Device displayed a nonexistent bridge is based entirely upon a map generated by a wholly different program, Garmin BaseCamp, *not* a map extracted from the Device itself. No navigation instructions are provided to the user from Garmin BaseCamp. By contrast, Garmin's forensic expert examined the actual map files resident on the Device and confirmed no bridge crossing the Tennessee River was ever displayed. Thus, this is not a case involving competing evidence or competing expert opinions. Rather, it is a case in which Plaintiffs have no evidence supporting defect or causation, while Garmin's expert analysis demonstrates that neither exists.

Accordingly, Garmin respectfully requests that this Court grant summary judgment for Garmin and dismiss all claims with prejudice.

## BACKGROUND

### I. Factual Background[1]

This case arises from a tragic accident, but Plaintiffs' products-liability claims against Garmin rest on speculation rather than evidence. On February 14, 2024, Meigs County Sheriff's Deputy Robert Leonard ("Deputy Leonard") arrested Tabitha Smith ("Ms. Smith") near the Tri-County Veterans Bridge and began transporting her to the Meigs County Jail. *See* SMF, at ¶¶ 1-2. Ms. Smith was handcuffed in the back seat of Deputy Leonard's patrol vehicle. *Id.*, at ¶ 3. That evening, Deputy Leonard drove his patrol vehicle into the Tennessee River at the Blythe Ferry Boat ramp located at the end of Blythe Ferry Lane. Both Deputy Leonard and Ms. Smith drowned. *Id.*, at ¶ 4.

Plaintiffs, including the estate of Ms. Smith and her children, initially attributed the accident to causes wholly unrelated to Garmin. In the companion action pending before this Court, *Smith v. Meigs County*, No. 1:24-cv-151-DCLC-CHS ("Meigs County Lawsuit"), Plaintiffs seek substantial damages from Meigs County and the Estate of Deputy Leonard. There, Plaintiffs allege the accident resulted from Deputy Leonard's lack of familiarity with the area, inadequate training by the Meigs County Sheriff's Office ("MCSO"), his use of a cellphone while driving in foggy conditions with limited visibility, and Deputy Leonard's failure to heed multiple roadway warnings, including rumble strips and signs advising that the roadway ended at the river. *See* SMF, at ¶ 5. Plaintiffs' expert in that action similarly attributes the accident to deficiencies in the MCSO's training and supervision practices, not to any Garmin product.

Only later did Plaintiffs advance the theory asserted in this lawsuit: that a Garmin Drive 52 EX navigation device found in Deputy Leonard's patrol car allegedly displayed a non-existent

---

[1] Garmin submits an accompanying Statement of Material Fact ("SMF") as to which it contends there is no genuine issue for trial.

bridge crossing the Tennessee River at the end of Blythe Ferry Lane and somehow caused Deputy Leonard to drive into the water. *See* Doc. 1, Compl., at ¶¶ 25-26, 36. However, Plaintiffs have never produced evidence establishing that the Device actually contained any map depicting a bridge at the end of Blythe Ferry Lane, that Deputy Leonard was using the Device at the time of the Accident, that he entered a route into the Device, or that he relied on the Device for navigation that evening.

The physical device itself was not recovered as part of the initial accident investigation. Approximately one month after the Accident, personnel from the MCSO informed investigators that they had observed a GPS device while recovering the patrol vehicle from the river. *See* SMF, at ¶ 6. Investigator, Agent Cortney Dugger, an agent for the Ninth District Attorney's Office and task force officer for the Federal Bureau of Investigation, subsequently located a Garmin Drive 52 EX on the driver's seat of the previously water-submerged patrol vehicle. *See* SMF, at ¶ 7. The Device was waterlogged and caked in mud. *Id.*, at ¶ 8. To recover information from the Device, Agent Dugger disassembled the Device, dried and cleaned its internal components, transferred the printed circuit board into a donor Garmin device, and extracted the available data. *Id.*, at ¶ 9. Significantly, Agent Dugger did not extract the map images stored in the Device. *Id.*, at ¶ 10.

After extracting available data, Agent Dugger imported portions of that data into Garmin BaseCamp, an entirely separate desktop-mapping application, and generated images purporting to depict the route traveled by Deputy Leonard. *Id.*, at ¶ 11. Those images form the centerpiece of Plaintiffs' allegations. *See* Doc. 1, Compl. at ¶ 26. However, BaseCamp does not utilize the same mapping database, software environment, or user interface as the Device. Consequently, images generated through BaseCamp do not depict what the Device may have displayed the night of the Accident had Deputy Leonard been using the Device and cannot be used to establish whether the

maps installed on the Device ever displayed a non-existent bridge. Agent Dugger acknowledged this distinction during his deposition. He testified that the Device's operating system and the BaseCamp software are "two totally different things" and confirmed that the images generated in BaseCamp were not the actual maps displayed on the Device. *See* SMF, at ¶ 11. Rather, the BaseCamp images were visualizations created from extracted data points using generic maps associated with the BaseCamp software. *Id.*, at ¶ 11. Agent Dugger further testified that determining what the Device actually displayed would require examination of the Device's maps which he did not download or access. *Id.*, at ¶ 12.

Subsequent forensic analysis of the Device established that the maps created by Agent Dugger in BaseCamp are not illustrative of the maps on the Device the night of the Accident. Pursuant to a Court-approved Agreed Forensic Protocol, the parties extracted a complete forensic image of the Device on March 23, 2026. *Id.*, at ¶ 15. This data extraction produced a forensic copy of the Device, including all map files, and all Parties have been in possession of identical copies since March 2026. *Id.*

Garmin's forensic expert, Jeff Martin, analyzed the acquired data, including the actual map files resident on the Device. Ex. 1, Martin Affidavit, at ¶¶ 17-20. Mr. Martin determined that the maps present on the Device at the time of the Accident did not depict a bridge crossing the Tennessee River at Blythe Ferry Lane. *Id.*, at ¶ 20. Mr. Martin further loaded the recovered device data onto a donor Garmin Drive 52 EX and conducted documented testing using routes designed to replicate the circumstances alleged by Plaintiffs. *Id.*, at ¶¶ 21-27. During those tests, the Device did not display a bridge at Blythe Ferry Lane crossing the river. *Id.*, at ¶ 24. Further, when route guidance was activated to create a route from the location of Ms. Smith's arrest to the Meigs County jail, the Device repeatedly directed the driver away from the Blythe Ferry boat ramp and

instructed the driver to take alternate routes or turn around rather than proceed toward the river. *Id.*, at ¶¶ 25-26. Additionally, analysis of the Device's data revealed that the Device was not used in route mode the night of the Accident, indicating Deputy Leonard did not have an active route engaged on the night of the Accident for navigation purposes. *Id.*, at ¶¶ 28-29. Deputy Leonard would have had to manipulate the Device to engage an active route to a particular destination. There is no evidence that this occurred.

Thus, after almost two years of litigation, Plaintiffs possess no evidence that the Device displayed a non-existent bridge, nor evidence that Deputy Leonard was using the Device at the time of the Accident. Plaintiffs have not disclosed an expert and have not provided any expert testimony supporting either proposition. Meanwhile, the only forensic examination of the actual map files confirms that the Device did not display the bridge Plaintiffs claim existed and would have re-routed the user away from the river on multiple occasions, as evidenced by the drive test conducted by Garmin with the Device. *See* SMF, at ¶ 20.

## II. Plaintiffs' Claims

Plaintiffs assert claims of strict liability (¶¶ 37-45), negligence (¶¶ 46-49), and gross negligence (¶¶ 50-53). Each of Plaintiffs' claims is based on the belief that the Device was providing an active route in Deputy Leonard's vehicle on the night of February 14, 2024 and that the Device contained a map, displaying a bridge beginning at Blythe Ferry Lane and crossing the Tennessee River. Doc. 1, Compl., at ¶ 26. Notably, the one allegation proffered as a basis for this assertion is the map created by Agent Dugger in BaseCamp. *Id.*, Fig. 2. Plaintiffs have provided no expert analysis or opinion that the Device was being used in route mode by Deputy Leonard at the time of the Accident or that the Device actually displayed a bridge from Blythe Ferry Lane across the Tennessee River.

## LEGAL STANDARD

Summary judgment is appropriate if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Chapman v. UAW Local 1005*, 670 F.3d 677, 680 (6th Cir. 2012). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012). A dispute is considered "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment "bears the initial burden of demonstrating the absence of any genuine issue of material fact." *Mosholder v. Barnhardt*, 679 F.3d 443, 448 (6th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case.'" *Id.* at 448 (citation omitted).

However, "[o]nce the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." *Id.* at 448-49 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "set out specific facts showing a genuine issue for trial." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also Anderson*, 477 U.S. at 256–57. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, or some "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v.*

*Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). If the non-moving party fails to make a sufficient showing of any essential element of its case, then the moving party is entitled to judgment as a matter of law. *Chapman*, 670 F.3d at 680 (citing *Celotex*, 477 U.S. at 323).

## ARGUMENT

The dispositive issue in Plaintiffs' case is whether the Device displayed a non-existent bridge beginning at Blythe Ferry Lane and crossing the Tennessee River. However, to prevail against Garmin in their strict liability, negligence, and gross negligence claims, Plaintiffs must not only establish the basic elements of a products-liability claim asserted under Tennessee law but also proffer admissible expert testimony. Without expert testimony, Plaintiffs cannot establish what was displayed on the Device on the night of the Accident, that the map showed a non-existent bridge crossing the river from Blythe Ferry Lane, or that the alleged display of a non-existent bridge caused the Accident. As a result of Plaintiffs' failure to proffer any expert testimony in support of their claims, Plaintiffs cannot carry their burden for a products liability claim under the Tennessee Products Liability Act ("TPLA"). *See* Tenn. Code Ann. § 29-28-101 *et seq*.

All products liability claims in Tennessee, whether sounding in strict liability or negligence, are governed exclusively by the TPLA. *See id.* at § 29-28-102(6). Under the TPLA, a plaintiff must establish three elements: "(1) the product was defective and/or unreasonably dangerous; (2) the defect existed at the time the product left the manufacturer's control; and (3) the plaintiff's injury was proximately caused by the defective product." *Scruggs v. Walmart Inc.*, 684 F. Supp. 3d 712, 718 (E.D. Tenn. 2023); *see Jackson v. Ford Motor Co.*, 842 F.3d 902 (6th Cir. 2016). At their core, each of these three elements requires expert testimony to support any products liability claim. *See, e.g., Downs v. Perstorp Components, Inc.*, 26 F. App'x 472, 477 (6th Cir. 2002) ("[W]ithout admissible expert testimony on causation, no reasonable jury could find for

plaintiffs because Tennessee law requires proof of causation for both strict liability and negligence actions.").

For example, in *Merrell v. Summit Treestands, L.L.C.*, 680 F. Supp. 3d 907 (E.D. Tenn. 2023), the plaintiff, who was injured after the cable assembly system of a treestand allegedly malfunctioned while he was climbing down, not only failed to provide evidence of a defect but also failed to disclose any expert to render an opinion on the design of the product or the alleged malfunction. *Id.* at 916. In contrast, the defendant disclosed two experts and submitted material proof that there was no defect. *Id.* The Court further acknowledged that the time for such expert disclosures had expired. *Id.* at 916-17. Finding the mere provision of Plaintiff's anecdotal and "self-serving" testimony insufficient to prove a defect, the Court concluded that "no reasonable jury could conclude" that the product was defective" and granted Summit Treestands' motion for summary judgment. *Id.* at 917.

Similar to the Eastern District in *Merrell*, courts throughout Tennessee grant motions for summary judgment where plaintiffs fail to proffer admissible expert testimony in support of their products-liability claims. *See Johnson v. Manitowoc Boom Trucks, Inc.*, 406 F. Supp. 2d 852, 867 (M.D. Tenn. 2005) (granting summary judgment where plaintiff failed to provide admissible expert testimony to prove the product was defective and unreasonably dangerous); *Brown v. Raymond Corp.*, 318 F. Supp. 2d 591, 598 (W.D. Tenn. 2004) (excluding plaintiff's expert testimony and granting partial summary judgment because expert testimony is essential under the prudent manufacturer test); *Langford v. Gatlinburg Real Estate & Rental, Inc.*, 499 F. Supp. 2d 1042, 1052 (E.D. Tenn. 2007) (granting summary judgment where plaintiff failed to "establish, through the use of expert testimony, that some specific defect in the product was the proximate cause of the [incident]."); *Pride v. BIC, Corp.*, 218 F.3d 566, 580 (6th Cir. 2000) ("[N]o reasonable

jury could find for [plaintiff] because, under Tennessee law, expert testimony is required to establish liability in cases alleging manufacturing and design defects.").

Because Plaintiffs have failed to disclose expert testimony and have otherwise failed to develop proof sufficient to satisfy their burden under the TPLA, their claims fail at the most fundamental level. Plaintiffs cannot establish the essential elements of their strict liability, negligence, or gross negligence claims without the expert analysis necessary to demonstrate a defect, causation, or any departure from the applicable standard of care. Moreover, Plaintiffs have failed to adduce evidence creating a genuine issue of material fact for trial. As set forth more fully below, in the absence of the expert testimony and evidentiary foundation required by the TPLA, Plaintiffs cannot carry their burden of proof, and summary judgment in favor of Garmin is warranted.

## I. Garmin is entitled to summary judgment on all claims because Plaintiffs cannot establish that any defect or unreasonably dangerous condition existed.

Tennessee products liability law requires that a plaintiff establish that the product at issue was defective and unreasonably dangerous. *See* Tenn. Code Ann. § 29-28-105. To prove the product is "unreasonably dangerous[,]" Tennessee's courts have recognized two tests: (1) the consumer-expectation test and (2) the prudent-manufacturer test. *See Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 428-29 (6th Cir. 2007). The consumer expectation test applies "where a product is 'dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it[,]'" whereas the prudent-manufacturer test "imputes knowledge of the dangerous condition to the manufacturer, and then asks 'whether, given that knowledge, a prudent manufacturer would market the product.'" *Id.* (internal citations omitted). Either test may be used, but a product defect must be proven by "direct evidence, circumstantial evidence, or a combination of both." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 968 (M.D. Tenn. 2002) (citing *Browder*

*v. Pettigrew*, 541 S.W.2d 402, 405 (Tenn. 1976)). While the consumer-expectation test can only be applied "to products about which an ordinary person would have knowledge" such that the consumer "would appreciate the condition of the product and the risk of injury[,]" "the prudent manufacturer test is more applicable to those circumstances in which an ordinary consumer would have no reasonable basis for expectations." *Id.*

**A. Plaintiffs' failure to offer expert testimony mandates summary judgment.**

To establish a claim under the prudent manufacturer test, expert testimony is essential "because a lay jury could not evaluate a manufacturer's prudence absent expert testimony[.]" *Brown v. Raymond Corp.*, 318 F. Supp. 2d at 596. Tennessee courts have developed a clear framework for determining when expert testimony is required: where a product is complex or its failure is beyond the grasp of an ordinary consumer, expert testimony is necessary. *See Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 979 (M.D. Tenn. 2002). In *Coffey*, the Middle District of Tennessee held that a specialized automotive hub removal tool was too complex and too unfamiliar to ordinary consumers to allow the plaintiff to make out a products liability claim without an expert witness. *Id.* at 972. The court reasoned that the average lay juror would have no reasonable expectation about the failure of such a tool, and that purely circumstantial and lay evidence was insufficient. *Id.* at 973. The Sixth Circuit affirmed, holding that the consumer expectation test could not be used to evaluate the tool because its complexity made it unlikely that even the average professional consumer could have a reasonable expectation of its safety without training. *Coffey v. Dowley Mfg., Inc.*, 89 F. App'x 927, 929 (6th Cir. 2003).

Here, the prudent-manufacturer test applies to the Device. Its GPS receiver, satellite data processing, proprietary mapping database, routing algorithms, and software architecture render it a complex product for which ordinary consumers lack the technical knowledge necessary to form

reasonable expectations regarding safety. The inner workings of how a navigation device acquires, processes, and displays geographic and navigation data, including the methodology by which roads, bridges, and other infrastructure are mapped and updated or what technical standards govern the accuracy of displayed information are matters entirely beyond the common knowledge of laypersons. And Plaintiffs' alleged defect here, that the Device displayed a non-existent bridge, involves the internal workings of the Device's mapping database and display algorithms, not a simple observable malfunction. As the court described the Device at issue in *Coffey*, "[t]his product is simply too complex and too unfamiliar to ordinary consumers to allow Plaintiffs to make out a claim under Tennessee law *without* an expert witness." 187 F. Supp. 2d at 972 (emphasis added).

While Plaintiffs may contend that the consumer expectation test should guide this analysis, such an argument ignores the fact that the consumer expectation test applies to products with which ordinary consumers have everyday experience and expectations of safety, products such as can openers and coffee pots. Further, even if the consumer expectation test is applied, a plaintiff must still "produce 'evidence of the objective conditions of the product as to which the jury is to employ its own sense of whether the product meets ordinary expectations as to its safety.'" *Coffey*, 187 F. Supp. 2d at 968 (quoting *Jackson v. Gen. Motors Corp*., 60 S.W.3d 800, 805-06 (Tenn. 2001)). Without expert testimony, the plaintiff cannot establish the basic issue of whether there was a defect i.e., a non-existent bridge, why it displayed what it did, or whether that display deviated from any applicable standard. Lay testimony alone is insufficient to establish the objective conditions of the Device.

Plaintiffs' failure to disclose an expert, submit an expert report, or tender any evidence in support of Plaintiffs' position leads to the inevitable conclusion that no reasonable jury could determine that the Device was defective. Thus, Plaintiffs cannot clear the threshold necessary to

survive summary judgment. They have failed to produce admissible evidence establishing that the Device was defective and unreasonably dangerous, while Garmin's expert analysis conclusively demonstrates the opposite. Because Plaintiffs bear the burden of proof on these essential elements and have no evidence to satisfy that burden, their claims cannot proceed to trial and should be dismissed.

**B. Beyond Plaintiffs' basic pleadings, Plaintiffs have provided no evidence in support of their claim that Deputy Leonard's Device displayed a non-existent bridge from Blythe Ferry Lane across the Tennessee River.**

Plaintiffs' deadline to submit an expert report was September 15, 2026. [Doc. 62]. That date has passed, and Plaintiffs have communicated no intention of disclosing an expert or submitting expert testimony in support of their claim. The Parties performed a forensic acquisition of the Garmin Device on March 23, 2026, and all Parties have been in possession of a forensic copy of the Device since that date. Since the forensic acquisition, Plaintiffs have sought no further analysis of the Device. Plaintiffs have provided no supporting expert testimony to validate their allegation that the Device displayed a non-existent bridge on the night of the Accident.

Plaintiffs' case thus rests on nothing more than the unsupported allegations in their pleadings. But allegations are not evidence, and the bare pleadings cannot substitute for the expert proof and admissible evidence required to create a genuine dispute of material fact. Plaintiffs' Complaint alleges, "[t]he maps produced by Defendants for use in the Garmin used by Deputy Leonard showed the presence of a bridge that has never existed on Blythe Ferry Road." Doc. 1, at ¶ 26. Accompanying this allegation, Plaintiffs provided Figure 2, which is described in the Complaint as a "**Map from Garmin BaseCamp** with Overlay of Robert Leonard's track on the night of Ms. Smith's death." Doc 1, at Page ID # 5 (emphasis added). As explained by Agent Dugger, this figure was neither pulled directly from the Device nor is it an accurate depiction of

what was or would have been displayed on the Device the night of the Accident had Deputy Leonard even been using the Device.

Rather, Figure 2 was created by Agent Courtney Dugger after he pulled location data from the Device on May 13, 2024. Ex. 2, Agent Dugger's Report of Forensic Findings. During his deposition, Agent Dugger confirmed that when he downloaded the data from the Device, the download produced a variety of data points, and he used Garmin BaseCamp to visualize these data points. Exhibit 3, Agent Dugger Depo., at p. 112. Agent Dugger acknowledged that the "mobile operating system" of the Device "versus the BaseCamp interface with Windows, . . . are two totally different things." *Id*. at 113. Agent Dugger's explanation of the data download and the subsequent mapping of that data illustrate that what was labeled as Figure 2 in Plaintiffs' Complaint does not reflect the actual maps displayed on the Device. *Id.* at 122. Instead, Agent Dugger acknowledged that to look at the actual maps on the Device, one would have to actually download those maps, something he admittedly did not do. *Id.* at 113, 115; *see also id.* at 125-28 (confirming that the figures depicted in Agent Dugger's report are BaseCamp drawings and not the actual maps on the Device). Therefore, the map depicted in Plaintiffs' Complaint at Fig. 2, the *only* basis for Plaintiffs' alleged defect in the Device, is neither an actual nor accurate depiction of the map displayed on the Device the night of the Accident.

Accordingly, Plaintiffs' theory of the alleged defect is unsupported by any admissible evidence. Plaintiffs have no expert proof that the Device depicted a nonexistent bridge across the Tennessee River, and Agent Dugger's deposition testimony affirmatively undermines both the allegations in the Complaint and the accuracy of Figure 2. Without evidence of a defect or unreasonable danger, Plaintiffs cannot create a genuine issue of material fact, and their claims fail.

### C. Garmin's expert performed a thorough analysis of the data and maps present on the Device and found the Device did not contain a map displaying a non-existent bridge crossing the Tennessee River from Blythe Ferry Lane.

Garmin's expert, Mr. Martin, provided a thorough analysis of the data and maps on the Device. Unlike Agent Dugger's extraction of data, the forensic acquisition of the Device and the analysis of the bit-by-bit image by Mr. Martin included downloading the actual maps and all accessible data contained in the Device. Ex. 1, at ¶¶ 11-16. The Parties experienced no issues during the acquisition on March 23, 2026, and all map files on the Device were successfully downloaded and copied. Upon analyzing the forensic image of the Device, Jeff Martin was able to confirm that neither the March 23, 2026 forensic acquisition, nor the May 13, 2024 forensic acquisition by Agent Dugger resulted in any change or updates to the map files within the Device.[2] The Device's map data was the same the night of the Accident as it was on May 13, 2024 and March 23, 2026.

Mr. Martin was able to analyze the Device's data by uploading the forensic copy of the data to a donor Garmin Drive 52 EX. Mr. Martin was then able to perform a test drive using the donor device which displayed the map files from the Device. These test drives were documented and preserved in video format and are provided herewith as Exhibit 4 and Exhibit 5. The test drives mimicked the path followed by Deputy Leonard on the night of the Accident. The first test drive engaged the device in an active route mode from the location of Ms. Smith's arrest to the Meigs County Jail:

- Tri-County Veterans Bridge routed to the Meigs County Jail but wrong turn onto Blythe Ferry Rd./Shadden Rd, following the below directions:
  - Start at Tri-County Veterans Bridge, Hiwassee Hwy., Birchwood, TN 37308
  - Enter route to Meigs County Jail, 410 River Rd., Decatur, TN 37322

---

[2] Agent Dugger also confirmed that his forensic analysis did not change or impact the maps on the Device. He did not "change it,… add to it, … or delete it." Exhibit 2, Agent Dugger Depo, at 106.

- o Approximately two miles after the bridge, take a wrong left turn onto Blythe Ferry Rd./Shadden Rd.
- o Follow Blythe Ferry Rd./Shadden Rd. until the intersection with Blythe Ferry Ln.

The second test drive did not engage the donor device in an active route mode but recorded what the device shows along the route Deputy Leonard took the night of the Accident:

- ➢ Tri-County Veterans Bridge to Meigs County Jail with Donor Device powered on with no route engaged.
  - o Start at Tri-County Veterans Bridge, Hiwassee Hwy., Birchwood, TN 37308 and begin driving to Meigs County Jail with no engaged route.
  - o Approximately two miles after the bridge, take a wrong left turn onto Blythe Ferry Rd./Shadden Rd.
  - o Follow Blythe Ferry Rd./Shadden Rd. until the intersection with Blythe Ferry Ln.
  - o Take a left turn onto Blythe Ferry Ln., drive to river
  - o While performing this test drive, record what the Donor Device reflects.

Ex. 6, Test Driving Routes. As depicted in the video recordings of the test drives, when the car approaches the river there is no image of a non-existent bridge crossing the Tennessee River. *See* Ex. 4, at 00:55:27. Further, when the Device is engaged and routing, the Device provides instructions at multiple points to take different routes **and even instructs the user to turn around to avoid encountering the river**. *See* Ex. 4, at 00:39:00-00:42:09; Ex. 5, at 00:39:00-00:42:09; *see also* Ex. 1, Expert Affidavit, at ¶¶ 26-27, 31.

Accordingly, while Plaintiffs provide neither expert input nor illustrative evidence of any defect in the Device, Garmin has both expert analysis and video documentation that the Garmin Drive 52 EX found in Deputy Leonard’s car after the Accident did not include any defects, did not display any non-existent bridge beginning at Blythe Ferry Lane and crossing the Tennessee River and will not engage an active route from the site of the arrest to the Meigs County Jail that traverses Blythe Ferry Lane. Moreover, when the route Deputy Leonard took is followed, the device repeatedly warns the driver to change course or make a U-turn before approaching the river.

## II. Garmin is entitled to summary judgment on all claims because Plaintiffs cannot establish the requisite causation.

Having failed to disclose an expert or offer any other competent evidence establishing a causal link between the alleged defect and their claimed injuries, Plaintiffs cannot satisfy an essential element of their claims. Causation is an essential element of any TPLA claim, and it accordingly is "'not enough that plaintiff suffered injuries from using . . . a product' but '[r]ather, there must be a showing that the particular defect or dangerous condition proximately caused the plaintiff's injury, or the manufacturer cannot be liable." *Hill v. Century Arms, Inc.*, 760 F. Supp. 3d 576, 596 (E.D. Tenn. 2024) (quoting *Durham v. Johnson & Johnson*, Case no. 3:20-cv-554, 2021 WL 3745730, at *4 (E.D. Tenn. Aug. 24, 2021)). Plaintiff bears the burden of "trac[ing] [the] injury to the defect[,]" *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 282 (Tenn. 2005), and "unless there is a showing that the particular defect or dangerous condition proximately caused the plaintiff's injury, the manufacturer is not liable." *King v. Danek Med., Inc.*, 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000).

### A. Plaintiffs' failure to identify an expert is fatal to their ability to prove causation.

Expert testimony is required to establish causation in a complex products liability claim for claims sounding in both strict liability and negligence. *See Downs v. Perstorp Components, Inc.*, 26 F. App'x 472, 477 (6th Cir. 2002) ("[W]ithout admissible expert testimony on causation, no reasonable jury could find for [the] plaintiff [ ] because Tennessee law requires proof of causation for both strict liability and negligence actions."); *Richardson v. GlaxoSmithKline*, 412 F. Supp. 2d 863, 871 (W.D. Tenn. 2006) (granting motion for summary judgment because plaintiff failed to offer any expert testimony establishing the product was the proximate cause of the injuries). In *Pride v. BIC, Corp.*, after determining that the district court properly excluded the plaintiff's expert testimony, the Sixth Circuit upheld summary judgment in favor of the defendant

because "without admissible expert testimony on causation and product defect, no reasonable jury could find for Pride because, under Tennessee law, expert testimony is required to establish liability in cases alleging manufacturing and design defects." *Pride v. BIC, Corp.*, 218 F.3d 566, 580 (6th Cir. 2000) (citing *Fulton v. Pfizer Hosp. Prod. Group, Inc.*, 872 S.W.2d 908, 912 (Tenn. Ct. App.1993)).

Similarly, in *Richardson v. GlaxoSmithKline*, 412 F. Supp. 2d 863 (W.D. Tenn. 2006), the Western District of Tennessee applied this rule directly to grant summary judgment. There, the court held that because the plaintiff had not offered any expert testimony establishing that the drug Paxil was the proximate cause of the plaintiff's injuries, the plaintiff could not establish a key element of his claim under the TPLA. *See Richardson*, 412 F. Supp. 2d at 871. The court quoted *Downs* for the proposition that without admissible expert testimony on causation, no reasonable jury could find for the plaintiff. *Id.* Tennessee's Courts are clear that where the product, and as a result the alleged defect and injury, are complex, expert testimony is vital to the case. *See Coffey*, 187 F. Supp. 2d at 979 ("[E]xpert testimony *is* necessary in Tennessee where a complex product or complex failure . . . is alleged.") (emphasis in original).

The question of whether the Device displayed a nonexistent bridge across the Tennessee River and whether that alleged display was the cause of the Accident presents precisely the type of complex technological causation question that requires expert testimony. The causal chain between a navigation device's display, a driver's decision-making, and an ultimate accident is not within the ordinary knowledge of a lay juror. That determination is beyond the scope of lay testimony and may only be ascertained through expert forensic analysis of the Device, its maps, and its data. Only through an expert could the intricacies of causation be wholly and accurately

presented to a jury. Thus, Plaintiffs' strict liability, negligence, and gross negligence claims collapse at the threshold. Without expert testimony, Plaintiffs cannot establish causation.

Conversely, Garmin's expert analysis confirmed "[t]he forensic evidence . . . does not support the proposition that the subject Device contained a map depicting a bridge across the Tennessee River at the end of Blythe Ferry Lane or that the Device, while operating in route guidance mode, directed Deputy Leonard along the path that resulted in the incident." Martin Affidavit, at ¶ 33. Where Plaintiffs wholly fail to provide any expert analysis or evidence as to causation, Mr. Martin's forensic analysis and testing demonstrate that the Device did not cause the Plaintiffs' claimed injuries. Accordingly, unlike Plaintiffs, Garmin's evidence and analysis confirms there was no causal connection between Plaintiffs' injuries and the mere presence of the Device in the patrol vehicle on the night of the Accident.

**B. Plaintiffs cannot establish proximate causation.**

In addition to the necessity of an expert to prove causation, a plaintiff must also "show that the product manufactured and sold by the defendant proximately caused the injuries [he] allege[s] to have sustained." *Richardson*, 412 F. Supp. 2d at 868 (citation omitted). Tennessee courts apply a three-pronged proximate cause test:

> (1) the tortfeasor's conduct must have been a 'substantial factor' in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Jackson v. Ford Motor Co.*, 842 F.3d 902, 908 (6th Cir. 2016) (quoting *Haynes v. Hamilton Cty.*, 883 S.W.2d 606, 611-12 (Tenn. 1994) (internal quotation marks omitted)). The District Court for the Western District of Tennessee assessed in *Richardson v. GlaxoSmithKline* whether the plaintiff had established proximate cause in support of plaintiff's negligence and strict liability claims. The

court explained, "[w]hile Plaintiff need not establish that Paxil was the sole or even last cause of his injuries, he must demonstrate that it was a 'substantial' or 'predominate' factor in the causation of his alleged injuries." 412 F. Supp. 2d at 871 (citing *Roberts v. Robertson Cnty. Bd. of Educ.*, 692 S.W.2d 863, 871 (Tenn. Ct. App. 1985)). The court granted summary judgment for the defendant because plaintiff's only causation evidence was a treating physician's testimony identifying several possible contributing causes of plaintiff's injury but conceding it was impossible to isolate the drug as the proximate cause. *Id.* The court's reasoning echoes the "substantial factor" inquiry set forth in *Jackson* and illustrates that, since the plaintiff could not show the product was a substantial factor in the injury, even if the product was a possible and independent factor, there was insufficient evidence to establish proximate cause and survive summary judgment. *Id.*

Here, even if Plaintiffs could provide support for their allegation that the Device showed a non-existent bridge, which they cannot and have not attempted to prove, Plaintiffs cannot establish proximate cause because Plaintiffs have no evidence to support a finding that the Device was a "substantial factor" in Ms. Smith's death. Plaintiffs' Complaint merely pleads that the alleged "defect was *a cause*" of the Accident. Doc. 1, at ¶ 45, 53 (emphasis added). Despite Plaintiffs' allegations that the Device was a cause of the Accident, Plaintiffs have zero evidence to support that the Device was even in use during the Accident, much less a substantial factor in causing the Accident. Thus, Plaintiffs are incapable of tracing the injury to the alleged defect.

All evidence gathered thus far supports the conclusion that the Device was not even in use at the time of the Accident. As Agent Dugger explained in his deposition, his forensic analysis of the Device did not suggest that the Device contributed in any way to the Accident:

> Q: . . . Let me ask you a question. In your investigation and your download of data, did you uncover any fact that you believe led you to the conclusion that the

operation of the Garmin device, the subject Garmin device, played any role in this accident?

A: No.

Ex. 3, Agent Dugger Depo., at p. 175. Further, Garmin's expert Mr. Martin has analyzed the Device data and concluded definitively, based on the files downloaded during the March 23, 2026, forensic acquisition, that the Garmin Device was not used in active route mode at the time of the Accident. Ex. 1, Martin Affidavit, at ¶¶ 28-30. Furthermore, the test drive using the donor device and the data from the Device, demonstrates that had Deputy Leonard used the Device to route him to the Meigs County Jail on the night of the Accident, the Device would have provided Deputy Leonard a completely different route than the route he took the night of the Accident. *See* Ex. 1, at ¶¶ 30-31. And, had the Device actually been utilized in route mode on the night of the Accident, it would have verbally and visually rerouted Deputy Leonard on four separate occasions while proceeding toward the Blythe Ferry Boat Ramp to take a different route or perform a U-turn. *Id.* at ¶ 31. Using the Device would have likely prevented this tragic accident.

Accordingly, all evidence demonstrates that the Device was not the cause of the Accident, and Plaintiffs have produced no evidence to the contrary.

**C. Plaintiffs' inconsistent causation theories in the Meigs County Lawsuit undermine their ability to establish causation.**

Plaintiffs have further impeded their ability to establish that the Device was actually the proximate cause of the Accident by pursuing multiple alternative theories in a parallel action against Meigs County and the Estate of Robert Leonard in this Court ("Meigs County Lawsuit"), No. 1:12-cv-151-DCLC-CHS. Plaintiffs' allegations and arguments proffered in the Meigs County lawsuit set forth causes of the accident wholly separate from the Device and support the conclusion that the Device was not a factor, and certainly not a substantial factor, in the accident.

First, Plaintiffs' Fourth Amended Complaint in the Meigs County Lawsuit sets forth numerous alternative theories that caused Deputy Leonard's vehicle to crash into the Tennessee River on February 14, 2024 at 10:03 pm. *See* Meigs County Lawsuit, Doc. 102. Plaintiffs allege that Deputy Leonard "ignore[d]" numerous warning signs posted at intervals along the roadway—including signs that read, "ROAD ENDS 1500 FT," "STOP," and "STOP AHEAD,"—and numerous rumble strips on the roadway leading to the river. *Id.*, at ¶¶ 30, 31, 33, 34, 35, 36, 84. Further, Plaintiffs allege that Deputy Leonard's patrol vehicle had no speedometer, odometer, or any other navigational equipment installed in it, and that Deputy Leonard was using his cellphone to send text messages just moments before the vehicle struck the water. *Id.* at ¶¶ 41, 46, 48.

Additionally, Plaintiffs' expert report submitted in the Meigs County Lawsuit attributed the accident to the lack of training provided to Deputy Leonard:

> Had MCSO instituted a structured FTO program with certified trainers, an FTO would have actively observed, evaluated, and corrected Deputy Leonard's visual scanning, multi-tasking habits, and reliance on secondary navigation screens during nighttime operations. Leaving inexperienced deputies to manage electronic distractions while navigating dark, unfamiliar corridors without mandatory safety protocols significantly heightened the risk of driver disorientation during prisoner transport.
>
> . . .
>
> By failing to establish a structured, certified Field Training Officer (FTO) program with standardized evaluation metrics, MCSO [(Meigs County Sheriff's Office)] deployed Deputy Leonard into solo night-shift patrol without verifying his operational readiness or geographic competency. . . . Had MCSO implemented standard law enforcement training practices, comprehensive hazard orientation, and clear operational policies, the tragic deaths of Deputy Leonard and Ms. Tabitha Smith could have been prevented.

Meigs County Lawsuit, Doc. 158-1, Page ID # 1485. Plaintiffs' thorough expert opinion submitted in the Meigs County Lawsuit provides significant evidence in support of the fact that lack of

training and policies from the MCSO were a substantial cause of the Accident. Nothing from the expert's opinions attributes the Accident to any defect or failure of the Device.

Currently, in the Meigs County Lawsuit, Plaintiffs are pursuing additional theories related to the working condition of the car and other issues related to the MCSO. Most recently, Plaintiffs filed a motion to re-depose certain witnesses. In this motion, Plaintiffs included as an attachment the sworn testimony of a former MCSO officer with knowledge concerning the condition of the vehicle Ms. Smith died in, specifically information that the headlights on the vehicle were not fully functional. Meigs County Lawsuit, Doc. 181, Page ID # 1735. Further, Plaintiffs are also "seeking information from Meigs County regarding a purported extensive prisoner vehicle maintenance program that was not previously disclosed by Defendant Meigs." *Id.* at Page ID # 1734. Again, these theories do not suggest any defect in the Garmin Device but instead propose other substantial factors causing the death of Ms. Smith.

Plaintiffs' allegations, expert opinions, and ongoing discovery efforts in the Meigs County Lawsuit identify numerous alternative causes of the Accident, yet none implicate the Device. Having advanced multiple theories attributing the Accident to Deputy Leonard's conduct, inadequate training, roadway conditions, vehicle issues, and deficiencies within the MCSO, Plaintiffs cannot now create a genuine issue of material fact by speculating that the Device was a substantial factor or the proximate cause of the Accident.

## **CONCLUSION**

After nearly two years of litigation, Plaintiffs remain unable to produce evidence supporting the central premise of their case. Despite having been in possession of a forensic image of the Device since March 2026 and the expiration of their expert disclosure deadline, Plaintiffs have failed to identify a single expert, disclose an expert report, or offer any expert opinion in

support of their claims. That failure alone is fatal. Under Tennessee law, expert testimony is required to establish the existence of the alleged defect, whether the Device was unreasonably dangerous, whether any alleged defect existed when the Device left Garmin's control, and whether any alleged defect proximately caused the Accident. Plaintiffs have no such proof.

Nor do Plaintiffs have any other admissible evidence supporting their allegations. Plaintiffs have produced no evidence demonstrating that the Garmin Drive 52 EX displayed a nonexistent bridge across the Tennessee River, no evidence that Deputy Leonard was using the Device at the time of the Accident, and no evidence that the Device played any role in the events giving rise to this lawsuit. Instead, Plaintiffs' claims rest entirely upon speculation and a demonstrably inaccurate visualization generated through BaseCamp software rather than the actual maps displayed to the user on the Device.

In contrast, Garmin has presented unrebutted expert testimony, forensic analysis, and documented testing establishing that the Device did not display the nonexistent bridge alleged in the Complaint, did not route users toward the Tennessee River, and would have repeatedly directed a driver to take an alternate route or turn around before reaching the river. Indeed, the undisputed evidence demonstrates that the Device was not a factor, let alone a substantial factor, in causing the Accident. Indeed, if used in route mode, the Device would have helped prevent the Accident from occurring in the first place.

Plaintiffs bear the burden of proving defect, unreasonable danger, and causation. Having failed to disclose an expert and having failed to produce evidence sufficient to establish any of those essential elements, Plaintiffs cannot create a genuine issue of material fact for trial. No reasonable jury could find in Plaintiffs' favor on the record before this Court.

Accordingly, Garmin respectfully requests that the Court grant summary judgment on all claims asserted against it, dismissing Plaintiffs' claims against Garmin with prejudice.

Respectfully submitted,

***/s/Donald J. Kelly***

Donald J. Kelly (Pro Hac Vice)
**BRICKER GRAYDON WYATT, LLP**
400 West Market Street, Suite 2000
Louisville, KY 40202
(502) 589-5235 / Facsimile (502) 589-0309
dkelly@bricker.com

**BRICKER GRAYDON WYATT, LLP**
333 Commerce Street, Suite 1050
Nashville, TN 37201
(615) 244-0020 / Facsimile (615) 256-1726
jbradshaw@bricker.com

Emma M. Weintraub (Pro Hac Vice)
**BRICKER GRAYDON WYATT, LLP**
6070 Poplar Avenue, Suite 300
Memphis, TN 38119
(901) 537-1020 / Facsimile (901) 537-1010
emweintraub@bricker.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed and served electronically upon the following via the Court's ECF system on this the 15th day of October, 2026:

Robin R. Flores
**FLORES LAW OFFICE**
4110 Brainerd Road, Suite A
Chattanooga, TN 37411
robin@robinfloreslaw.com
*Attorneys for Plaintiff Nathan Smith*

Jeffrey W. Rufolo
**SUMMERS, RUFOLO & RODGERS, P.C.**
735 Broad Street, Suite 800
Chattanooga TN 37402
jrufolo@summersfirm.com
*Attorneys for Plaintiffs NR, JE and LC*

W. Neil Thomas, III
Michael Mason Thomas
**THOMAS & THOMAS**
6148 Lee Highway, Suite 1115
Chattanooga TN 37363
wntthomas@twtlawfirm.com
mthomas@twtlawfirm.com
*Attorneys for Plaintiff Nathan Smith*

Alyson Oliver
**OLIVER BELL GROUP**
50 W. Big Beaver Road, Suite 200
Troy, Michigan 48084
Notifications@oliverlawgroup.com
aoliver@oliverlawgroup.com
*Attorneys for Plaintiffs NR, JE and LC*

***/s/Donald J. Kelly***