UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| TABITHA MARIE SMITH (deceased) (aka Tabatha Marie Colbaugh), by and through her surviving children NATHAN ALEXANDER SMITH, JE through next friend JH, NR through next friend SR, and LC through next friend EH, | ) | |
| and | ) | |
| NATHAN ALEXANDER SMITH, JE through next friend JH, NR through next friend SR, and LC through next friend EH (individually), | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 1:25-CV-00050-7-DCLC-CHS |
| GARMIN INTERNATIONAL, INC, | ) | |
| Defendant. | ) | |

**MINOR PLAINTIFF'S REPLY IN SUPPORT OF THEIR OMNIBUS MOTION TO EXTEND CASE MANAGEMENT ORDER AND TO EXTEND DEADLINE TO RESPOND TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COME the Minor Plaintiffs, by and through Counsel, and submit this Reply in Support of Their Omnibus Motion, (ECF No. 65), and would show the Court the following:

## I. Good Cause Exists to Amend the Scheduling Order

Defendant Garmin argues that Plaintiffs cannot establish good cause to amend the scheduling order because they cannot establish diligence. Garmin's lead case, *Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-cv-505, 2018 U.S. Dist. LEXIS (E.D. Tenn. Mar. 9, 2018), is factually and legally distinguishable from the present matter and those differences warrant a different result. In *Adkisson*, after *extensive* expert discovery – in which plaintiffs' experts and/or their reports were routinely found to be deficient – the plaintiffs moved to amend the scheduling order to permit the identification three new experts five months after the expiration of their disclosure deadline. *Id.* at *9–15. Moreover, the *Adkisson* plaintiffs only moved to extend the deadline two months after a

status conference "put them on notice" that general causation was a contested issue and might require additional experts and two weeks after the defendants filed a motion for partial summary judgment on general causation. *Id*. at *21. The *Adkisson* Court was also unconvinced by the plaintiffs' arguments of "why new expert witnesses are necessary as opposed to supplementing existing expert reports such that of Mr. Hudgens," *id.* at 25, and determined that the "voluminous discovery involved, and the various extensions of time that have already been granted, the Court is doubtful that a new round of expert discovery can be conducted in a manner that does not disrupt the trial date." *Id*. at 26.

This case presents significantly different circumstances. To begin with, Plaintiffs here are not attempting to establish a new theory of liability or bring previously unknown experts into the case. There are also the temporal differences, in *Adkisson* the plaintiffs did not file their motion until five months after their disclosure deadline, two months after a status conference brought the issue to their attention, and two weeks after the defendants filed a motion for partial summary judgment. In this case, Plaintiffs moved this Court 36 days after their deadline for expert disclosures and just seven days after Defendant Garmin filed its motion for summary judgment.

Defendants also point to *Estate of Rodriguez v. United States*, 722 Fed. App'x 409 (6th Cir. 2018), as supporting their position. (ECF No. 67, PageID # 691). Their reliance is misplaced. As the Sixth Circuit recognized, "Even after the estate recognized it needed more time to complete expert discovery, it waited eight weeks to file a motion for an extension." *Estate of Rodriguez v. United States*, 722 Fed. App'x 409, 412 (6th Cir. 2018). In this case, Plaintiffs filed their motion within a week of recognizing the problem. It is also notable that the *Rodriguez* Court noted that the dispositive nature of the expert report weighed in favor of granting additional discovery, *id*., a

factor that weighs in favor of Plaintiffs here. (ECF No. 67, PageID # 701) ("This is a product-liability case in which, under Tennessee law, expert testimony is required . . .").

In *Adkisson*, the Court exercised its discretion and denied the plaintiffs motion based on the totality of the circumstances.[1] Given the different facts of this case, there is good cause to amend the scheduling order and this Court should GRANT Plaintiffs' Motion.

**II. The *Pioneer* factors weigh in favor of granting Plaintiffs' Motion**

While Plaintiffs admitted that Defendant Garmin would suffer some prejudice, it was with respect to the premature filing of their motion for summary judgment. (ECF No. 65, PageID # 678). Defendant Garmin argues that it will suffer prejudice because "Allowing a late report would permit Plaintiffs to manufacture, after the fact, the very evidence whose absence entitles Garmin to summary judgment." (ECF No. 67, PageID # 694). This mischaracterizes Plaintiffs' request. Plaintiffs are working to obtain their expert report from Robert Draper who has not been provided a copy of Defendant Garmin's motion for summary judgment or expert report. Plaintiffs are not attempting to "manufacture" any evidence, but obtain a report on the evidence that the Parties jointly obtained in March of 2026. *See* (ECF No. 65, PageID # 678) (explaining that Plaintiffs are "simply waiting for the necessary report to be completed so that it can be filed . . ."). Depending on the contents of Robert Draper's report, Defendant Garmin *may* wish to supplement the opinions of its expert if they do not already address the contents of Plaintiffs' expert report, but it will not be because Robert Draper's report was drafted with insights into Defendant Garmin's expert report. Defendant Garmin argues that granting Plaintiffs' Motion "would allow Plaintiffs to react to

[1] The Court repeatedly calls into question the veracity of some of the arguments put forth by the plaintiffs. *See, e.g., Adkisson*, *supra* at * 23–24 (explaining that the plaintiffs' argument that they only recently realized that defendants data was unreliable was not tenable given that it was an allegation in their amended complaint).

Garmin's expert despite bearing the burden of proof and force Garmin to re-open and re-do that work: depose Plaintiffs' expert, potentially supplement Garmin's expert affidavit, and potentially re-brief summary judgment." (ECF No. 67, PageID #694). However, the only expense described by Garmin that would not normally be associated with expert discovery and litigation is that Defendant Garmin may need to "potentially re-brief summary judgment." At worst, the speculative prejudice is minimal, at best it is non-existent.

Defendant Garmin also argues that the duration of delay, within the context of this case, was substantial and therefore weighs against a finding of excusable neglect. (ECF No. 67, PageID # 694–695). At the outset, Plaintiffs' Counsel would note that while their Omnibus Motion was filed seven days after Garmin's Motion for Summary Judgment Plaintiffs' Counsel emailed Counsel for Defendant Garmin the day the motion was filed seeking this extension, (ECF No. 65, PageID # 673, ¶19), and filed their Omnibus Motion as soon as it was completed. Defendant Garmin is correct that under certain circumstances, courts have found delays as little as three-weeks to significantly interfere with case management, (ECF No. 67, PageID # 694) (quoting *Cooper v. Shelby Cnty.*, No. 07-2283, 2010 U.S. Dist. LEXIS 42290 (W.D. Tenn. Apr. 29, 2010), those circumstances are clearly distinguishable from the present case. For example, in *Howard v. Nationwide Property and Cas. Ins. Co.*, 306 F. App'x 265 (6th Cir. 2009) *followed by Cooper v. Shelby Cnty.*, No. 07-2283, 2010 U.S. Dist. LEXIS 42290, *19 n. 25 (W.D. Tenn. Apr. 29, 2010), the Sixth Circuit affirmed the district court's finding of prejudice where a response to a Motion for Summary Judgment was only filed after the court issued a show cause order, the Sixth Circuit found that the three-week delay caused prejudice because it prevented the court from resolving the motion for summary judgment prior to a scheduled mediation and trial. *Id.* at 267 ("The three-week delay interfered with the district court's ability to expediently resolve the summary judgment

motion prior to trial and mediation."). That is simply not the case here, there is no impending mediation or trial that the requested delay will impact, as Plaintiffs previously argued, the dispositive motion deadline for the current scheduling order is not until December 18, 2026. Thus, the only prejudice that Defendant Garmin *may* face is the need to re-brief its motion for summary judgment. To the extent Defendant Garmin is prejudiced, it is minimal and not unfair.

Defendant Garmin argues that the inadvertence of Plaintiffs' Counsel is insufficient to establish excusable neglect. (ECF No. 67, PageID # 695). However, the excusable neglect standard is an "equitable one, taking account of all relevant circumstances surrounding the party's omission." *Howard*, 306 Fed. App'x at 266 (quoting *Pioneer Inv. Serv. Co v. Brunswick Assocs. P'Ship*, 507 U.S. 380, 395 (1993). Even *Howard* recognized that in *Pioneer* the Supreme Court found excusable neglect where there was no prejudice to the opposing party or efficient judicial administration, combined with good faith by counsel and client." *Id.* at 267 266 (quoting *Pioneer Inv. Serv. Co v. Brunswick Assocs. P'Ship*, 507 U.S. 380, 397–398 (1993)). In this case, there is no – or very limited – prejudice to Defendant Garmin or the court's administration of this case, and no evidence of bad faith on the part of Plaintiffs' Counsel or Plaintiffs. Defendant Garmin makes only a brief attempt at establishing bad faith by Plaintiffs' Counsel by pointing to the *Adkisson* opinion and chopping together quotes from the good cause and excusable neglect section. *See* (ECF No. 67, PageID #696) (quoting *Adkisson*, 2018 U.S. Dist. LEXIS 38674, at *22, 27).[2] However, the *Adkisson* Court did not articulate the basis for its finding of bad faith beyond "the Court finds that Plaintiffs have not acted in good faith in waiting until October 2017 to seek an extension of time on a deadline that expired more than five months ago." *Adkisson*, *supra* at *27.

[2] Defendant Garmin relies upon the Westlaw version of the unreported *Adkisson* case which has different internal pagination.

It is entirely possible it was related to the other discovery issues that plagued that case. *See, e.g.*, *id*. at 26 n. 5 (explaining that the movant had not produced an expert report for the first epidemiologist identified in their disclosures while trying to add a new epidemiologist). Regardless, Plaintiffs have always acted in good faith during this litigation and continue to do so.

In sum, the first, second, third, and fifth *Pioneer* factors weigh in favor of granting Plaintiff's Omnibus Motion.

## CONCLUSION

WHEREFORE, the Minor Plaintiffs respectfully request this Court GRANT their Omnibus Motion.

Respectfully submitted,

*/s/ Paul Matouka*
Paul Matouka (P84874)*
Oliver Bell Group
Attorneys for Minor Plaintiffs
50 W. Big Beaver Rd.
Suite 200
Troy, MI 48084
(248) 327-6556
pmatouka@oliverlawgroup.com
*Admitted *pro hac vice*

Dated: November 9, 2026.

## PROOF OF SERVICE

I, Paul Matouka, hereby certify that on November 9, 2026, I filed the foregoing document using the Court's CM/ECF filing service which will cause a copy to be served upon all counsel of record.

*/s/ Paul Matouka*
Paul Matouka